JACK PRYOR, J. W. SAMPLE, DORA SAMPLE, MART SAMPLE, H. D. CORWINE, Individually and as Trustee, BIRDIE CORWINE, his wife, and R. E. L. PRYOR, *Appellants.* v. OAK RIDGE DEVELOPMENT CORPORATION, a Corporation, *Appellee.*

Division B.

Opinion filed December 22, 1928.

Petition for rehearing denied April 2, 1929.

1086

*Palmer, Dickenson, Shurley & Lake* and *Swearingen & Wilson*, for Appellants;

BUFORD, J.—A bill of complaint was filed in the Circuit Court of Polk County to rescind a purchase and sale of certain lands. The bill alleges in substance that R. E. L. Pryor and some other person, unnamed, procured an option from the owners to purchase said lands for $83,700.00. That Pryor and his associates were unable to finance the deal and thereupon Pryor organized a corporation under the laws of the State of Florida under the name of Oak Ridge Development Corporation and sold stock in that corporation to certain individuals who are now owners of such stock. That the corporation was formed and the stock therein sold for the purpose of purchasing the property upon which Pryor and his associates held the option. That Pryor was a stockholder in the corporation and acted for and in behalf of the corporation in consummating the purchase of the lands. That Pryor represented to the stockholders of the corporation that the lands could not be purchased for less than $83,700.00 and procured Jack Pryor, one of the defendants, to make the same statement to one of the stockholders of the corporation prior to the closing of the deal, when, in truth and in fact, the said R. E. L. Pryor was to receive a sum of money and did receive a large sum of money as his commission and also received certain notes as commission, all of which he retained and did not divulge to the corporation or its stockholders. The bill alleges that this action on the part of R. E. L. Pryor who, it is alleged, was agent for the corporation and its stockholders, and of Jack Pryor, who was part owner of the lands involved and represented the other owners, constituted a fraud on the corporation and its stockholders, because of which the purchase and sale should be cancelled and rescinded and the consideration received by the vendors returned to the vendees. By im-

plication, it is alleged in the bill that a compromise has been heretofore effected between the parties in the following language:

That the defendants in this suit will set up as defense that there has been a compromise and that the land has been deeded back to the defendants, with the exception of two (2) lots, in consideration of the satisfaction of the fifty-six thousand seven hundred dollars ($56,700.00) mortgage securing notes for fifty-six thousand seven hundred dollars ($56,700.00) made and executed by the complainant corporation as evidence of the amount of the unpaid purchase price and the surrender of said notes, but the complainant corporation says that at the time this transaction took place it was without knowledge of the fraud. A copy of the Satisfaction of Mortgage and the Deed are attached hereto and made a part of this bill.

It is also alleged that the complainants in the court below have demanded the return of all the purchase price and have tendered to the defendants deed embracing all the lands, except two (2) lots which had been sold and released from the mortgage.

A demurrer was filed by R. E. L. Pryor and separate demurrer was filed by the other defendants. The demurrers were each overruled and from such orders the appeal was taken.

There is no allegation or intimation in the bill of complaint that the character of the lands involved in the litigation was not inspected by the Oak Ridge Development Corporation, or its stockholders. There is no allegation or intimation in the bill of complaint that any false representation was made by any of the owners selling the lands to the corporation as to any existing fact which affected the value of the lands. There is no allegation in the bill

of complainant that the complainants, or any of them, were deceived by the vendors of the lands as to any existing facts regarding the location, condition or title to the lands which would in anywise affect its value.

Cancellation and rescission is sought upon the sole ground that R. E. L. Pryor while acting as agent for, and a stockholder of, the purchasing corporation and its stockholders made false statements in regard to commissions which he was to receive and made a secret profit out of the transaction, and that he procured one of the vendors representing himself and other vendors, to make a like statement to one of the stockholders of the corporation, representing himself and other stockholders.

The deed conveying the lands from Corwine and wife was dated October 8th, 1925. The mortgage bore the same date. Nine Thousand, Four Hundred Fifty Dollars ($9,-450.00) was due one year from date. The satisfaction of mortgage referred to in the bill of complaint appears to be dated December 30th, 1926. The suit was filed October 24th, 1927.

It will be observed again that R. E. L. Pryor, as is alleged in the bill, held a contract for the purchase of the lands dated July 12th, 1925, for and at the price of Eighty-three Thousand, Seven Hundred Dollars ($83,700.00).

The bill does not allege that there was, at the time the alleged false representations were alleged to have been made, any contract or agreement between the owners of the property and R. E. L. Pryor that R. E. L. Pryor was to receive any commission on the purchase price of said land in case of sale.

In our opinion, the bill does not state a case authorizing cancellation and rescission of the contract. The bill shows upon its face that the corporation and its stockholders had notice that Jack Pryor was a part owner and vendor of

the lands. Therefore, that he was not acting in any fiduciary relation with the vendees and that the vendees were not in position to inquire of him and his associates what would be done with the proceeds of the sale and that he, Jack Pryor, was under no legal obligation to advise the vendees whether or not commissions would be paid by the vendors. Of course, a moral obligation rested on him, if he spoke at all, to speak the truth, but his statement, whatever it might have been, in regard to this particular matter could have constituted no legal fraud on the vendees.

The case of R. E. L. Pryor is different. Assuming that the allegations of the bill are true, and the demurrers admit such allegations to be true, R. E. L. Pryor occupied a fiduciary relation toward the corporation and its stockholders, which bound him to give to the corporation and such stockholders the true facts in regard to the transaction and which precluded him from making a secret profit. If he did so deceive his principal and associates and did receive a secret profit, their remedy is at law or by a suit in equity for an accounting and not by a suit in equity to rescind the contract because of the fraud and deception practiced by its agent and associate.

In Harrington v. Rutherford, 38 Fla. 321, 21 So. R. 283, the Court say:

As a general rule, fraud can not be predicated on a mere promise not performed. As stated in one case, "to be available there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or his property. In morals the failure to perform a promise may be without excuse or justification, but in law false representations to authorize the rescission of a contract must be made in regard to existing facts." Perkins v. Lougee,

6 Neb. 220. The authorities establish the rule that ordinarily a promise to do something in the future, though made by one party as a representation to induce another to enter into a contract, will not amount to a fraud in a legal sense, though the promise, subsequently and without excuse be broken and unfulfilled.

In Gardner v. Knight, an Alabama case, reported in 27 So. R. 298, in discussing grounds for the recission of a deed, the court say:

When a bill to cancel a deed contains averments that the consideration for the conveyance was an agreement to support the grantor and to make improvements on the land, and the deed, as set out in the bill, contains similar recitals, a further averment in the bill that the grantee took advantage of grantor's infirmities and procured the execution of the deed without consideration, is contradictory and affords no ground for relief.

In Repey v. Cronan, et al., Ky. Court of Appeals, reported 115 S. W. R. 791, the court say:

A real estate broker can not be held liable for representing to an intending purchaser that the owner would not accept less than the sum named by the broker for the premises, though the owner had in fact agreed with him to sell at a lower figure, in the absence of any confidential relation between the broker and intending purchaser or fraud to prevent inquiry or investigation by such purchaser.

To the same effect is McLeannan v. Investment Exchange Co., et al. (Missouri), 156 S. W. R. 730.

We must bear in mind that the alleged fraud complained of in this case was only the fact that the agent and as-

sociate of the vendees made a secret profit on the sale and purchase of the lands and deceived his principal and associates in regard thereto and that one of the vendors, representing himself and other owners, made a false statement in regard to that fact. Had the statement made been true, the fact would have added nothing to the value of the land and that it was false took nothing from the value of the land. The complainants certainly could not be heard to say that having inspected the land, they bought it at what appeared to them to be its value of $83,700.00 and that they would not have bought it at a lesser price. It appears only reasonable that they would have been more anxious to acquire the property at a price less the commission paid R. E. L. Pryor than they would have been to purchase the property paying the price including the commission. There is no allegation in the bill that the price at which the land was purchased was excessive, or not a fair price at the time and place of the purchase and sale.

The misrepresentation to constitute ground for recission must have been an inducement to the contract, otherwise it will be no ground for avoiding it. 13 C. J. 390.

In Crocker et al. v. White et al., 162 Ala. 476, 50 So. R. 227, the court say:

> To amount to fraud, authorizing equity to rescind a contract the misrepresentation must relate to a fact material to the interest of the other party and must be such a representation concerning the subject-matter as if taken as true would add substantially to its value or promise.

In DeLaney v. Jackson, 95 Ark. 131, 128 S. W. R. 859, the court say:

> In order to vitiate a contract on the ground of fraudulent misrepresentation, such misrepresentation must

relate to a matter material to the contract and in regard to which the other party had a right to rely and did rely, to his injury.

One of the necessary elements of fraud to constitute ground for rescission as stated by Mr. Pomeroy, II Pomeroy Equity Jurisprudence, Sec. 887, is the affirmation of a fact and this fact, to be material, must affect the value of the property or cause loss to the purchaser. Mr. Pomeroy in his work above cited, Sec. 898, discussing the necessity of materiality of misrepresentation, says:

The last element of a misrepresentation, in order that it may be the ground for any relief, affirmative or defensive, in equity or at law, is its materiality. The statement of facts of which it consists must not only be relied upon as an inducement to some action, but it must also be so material to the interests of the party thus relying and acting upon it, that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been. The party must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the misrepresentation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as *mere* tribunals of conscience to enforce duties which are *purely* moral. If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable.

In McNabb v. Tampa and St. Petersburg Land Co., 83 Fla. 90, this Court say:

"Whenever, in the organization of a corporation, there exists between the promoter and corporation a *quasi* trust relation, and there arises a right of action growing out of a breach of the fiduciary duty resulting from such relation, a court of equity affords a far more ample, complete and adequate remedy than can be had in a court of law."

In that case, however, the court was dealing with a case wherein the parties bore a fiduciary relation one to the other and the rule as stated in that case would apply to a suit in equity brought by the complainants in the court below against R. E. L. Pryor for an accounting for secret profits and commissions alleged to have been made and acquired as is set forth in the bill of complaint now under consideration.

It is.a general rule that a contract can not be rescinded for fraud or misrepresentation where it is not possible to put the parties back in their original position and with their original rights. 13 C. J. 619. Graynes v. Sanders 93 U. S. 51, 23 Law Ed. 798; Lyon y. Bertram, 20 Howard 149, 15 Law Ed. 847; Rigdon v. Wolcott, 141 Ill. 649, ·31 N. E. R. 158.

The bill alleges that the complainants prior to the institution of suit had sold and conveyed a part of the lands to third parties and particularly excepts this portion of the lands from its tender of reconveyance.

For the reasons stated, the orders overruling the demurrers should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion and judgment.